# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:06CR96-W |
| | ) | |
| | ) | |
| vs. | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| (1) WILLIAM CLOUD | ) | MOTION TO PRECLUDE |
| (5) JUDERITA RUSSELL | ) | OPINION EVIDENCE |
| | ) | |
| | ) | |
| _____ | ) | |

NOW COMES the United States of America, by and through Gretchen C.F. Shappert, United States Attorney for the Western District of North Carolina, and moves in opposition to defendant Cloud's Motion to Preclude Opinion Evidence in this matter. In support of its opposition, the United States states as follows.

## I. ISSUE

Defendant Cloud has moved this Court to conduct a *Daubert* hearing to consider the admissibility of the government's proffered expert testimony and questions the admissibility of such testimony. Because the government's proffered expert testimony is both relevant to these proceedings and reliable on its face, the testimony should be deemed admissible without the need for a *Daubert* hearing.

## II. DISCUSSION

The Federal Rules of Evidence provide that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify

thereto in the form of an opinion or otherwise...."  Fed R. Evid. 702.  In *Daubert v. Merrell Dow Pharms., Inc.,* the Supreme Court made clear that it is the trial court's duty to play a gate keeping function in deciding whether to admit expert testimony: "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  509 U.S. 579, 589 (1993).  The Court announced five factors that may be used in assessing the relevancy and reliability of expert testimony.  *Id* at 593-94.  Rather than providing a definitive or exhaustive list, *Daubert* merely illustrates the types of factors that will "bear on the inquiry." *Id.* The analysis must be "a flexible one."  *Id.; see also Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 ( "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.").

In *Kumho Tire*, the Supreme Court extended *Daubert's* gate keeping function test to all expert testimony and stated that "the law grants a district court the same broad latitude when it decides *how* to determine [the] reliability [of expert testimony] as it enjoys in respect to its ultimate reliability determination."  *Supra* at 142 (emphasis in original).  Trial judges have "the discretionary authority needed both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises."  *Id.* at 152.  Accordingly, a district court is not always required to conduct a *Daubert* hearing to qualify an expert witness.  *See United States v. Beasley*, 495 F.3d 142 (4th Cir. 2007)(district court did not abuse its discretion by not conducting a *Daubert* hearing where expert's credentials were substantial to qualify him to testify to give testimony on the process of making crack cocaine from cocaine powder); *United States v. Phung*, 127 Fed.Appx.

2

594, 597 (3rd Cir. 1995)(district court did not abuse its discretion by declining to hold a *Daubert* hearing prior to permitting the testimony of a DEA chemist regarding sampling methodology).

Rule 702 provides that expert testimony is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *See United States v. Winkle,* 477 F.3d 407, 415-17 (6th Cir. 2007). In *Winkle*, the Court of Appeals for the Sixth Circuit held that a bank examiner's opinion that a check kite had occurred was admissible under Rule 702 given the complexity of a check kiting scheme and the fact that the general public may not be aware of the mechanics of such a scheme. *Id*. The Court noted that such a scheme would not be something within the normal experience of the members of the jury and analogized to expert testimony discussing methods and techniques regarding drug distribution not generally within the general knowledge of a layperson. *Id.*; *see also United States v. Heath*, 970 F.2d 1397, 1405 (5th Cir. 1992) (the district court's limitation of a real estate lawyer's testimony was in error where expert's specialized knowledge and experience in the field of real estate closings were beyond the knowledge and skills of the jurors; however, such error was deemed harmless).

### The Expert Testimony to be Offered by the Government During its Case-In-Chief is Reliable Specialized Knowledge that is Relevant to Assist the Jury to Understand the Evidence in This Matter.

The Second Superseding Indictment in this case alleges that defendants Cloud and Russell were engaged in a complex mortgage fraud scheme that involved the submission of fraudulent loan application documents to mortgage lenders to obtain loans that investors would not otherwise have been able to obtain absent the fraud. The scheme relied upon the actions of many individuals including scheme promoters, mortgage brokers, recruiters, closing attorneys,

3

and mortgage underwriters. The scheme also involved the use of documents typically relied upon during real estate closings and the mortgage underwriting process, information not necessarily familiar to the average juror. The Indictment also alleges that defendant Russell knowingly processed these fraudulent loan packages in the course of her job as a mortgage loan underwriter.

The alleged mortgage fraud scheme was sufficiently complex to warrant a baseline discussion at trial of real estate and mortgage brokerage practices and to familiarize the jurors with the processes, the players and the documents that were utilized in the scheme. At this time, the government anticipates calling two expert witnesses during its case-in-chief to testify to their specialized knowledge of real estate transactions and mortgage brokerage practices. The Court's gate keeping responsibility is to ensure that the government experts' testimony is both relevant and reliable.

   1.    ***The Anticipated Testimony of Ms. Debra Sherrill is Relevant and Reliable.***

First, the government anticipates calling during its case-in-chief Ms. Debra Sherrill, a Mortgage Banking Instructor at Central Piedmont Community College. Ms. Sherrill will testify generally regarding her specialized knowledge of how a real estate transaction works, including the real estate closing process and the mortgage brokerage process. She will specifically discuss the participants involved in a real estate transaction, their respective roles, and their interaction with one another. She will also discuss the documents that are utilized to execute a real estate closing and the documents that are relied upon to determine whether to approve a mortgage loan. Such documents will likely include a loan application and associated documents, property

4

appraisals, and HUD-1 Settlement statements.   Such testimony is certainly relevant in this case to assist the jurors in understanding the framework upon which this charged mortgage fraud activities occurred, and the manner in which the fraud was perpetrated.

Ms. Sherrill is sufficiently qualified to offer the proffered expert testimony.  She is currently a Mortgage Banking Instructor at Central Piedmont Community College; she has been a full time professor there since August 2005 and was an adjunct professor there from 2000 until August 2005.  Prior to her teaching position, Ms. Sherrill was a Production Operations Manager for Wells Fargo Home Mortgage from February 2003 to August 2005, and held various positions in the mortgage brokerage industry to include:  Manager of F&T Mortgage, Operations Manager for Washington Mutual, Branch Operations Manager for HomeComings Financial, Regulatory Compliance Analyst for Jack Henry and Associates, Senior Loan Processor for First Financial Services, Office Operations Manager for Harbourton Mortgage, Branch Operations Manager for Alternative Lending Mortgage, and Senior Loan Processor for National City Mortgage.  Ms. Sherrill has a Master's Degree in Business Administration from Wingate University and a Bachelor of Arts degree in Economics from the University of North Carolina at Charlotte.  Given her education, training, and experience, Ms. Sherrill certainly has the qualifications to provide testimony on real estate transactions and the mortgage brokerage process as set forth above.

5

## 2. The Anticipated Testimony of Ms. Constance Wilson is Relevant and Reliable.

At this time, the government also anticipates calling Ms. Constance Wilson, Vice President of Interthinx, during its case-in-chief to testify to her specialized knowledge regarding mortgage brokerage and specifically the industry-accepted standards applicable to mortgage loan underwriters. Ms. Wilson will testify to the industry-accepted standards that a mortgage loan underwriter is expected to apply when reviewing loan application documents for the purpose of approving a mortgage loan and the "red-flag" indicators of potential fraud. She will also provide assessments as to whether the loan documents submitted to obtain mortgages and relied upon by defendant Russell in this case met those standards.

One question that will most likely be at issue in this trial is whether defendant Russell acted with fraudulent intent when underwriting mortgage loans that were related to the charged conspiracy. Ms. Wilson's testimony is relevant to educate the jury as to the industry standards for the review of loan application documents by an underwriter and whether the documents accepted by defendant Russell during the underwriting process in fact met those standards. To show that defendant Russell disregarded those standards in order to approve fraudulent loan applications submitted by co-conspirators, while receiving direct payments from those co-conspirators, is central to the issue of defendant Russell's fraudulent intent. Ms. Wilson will also testify to the ethical requirements of underwriters, including conflicts of interest.

Ms. Wilson has spent 27 years involved in Mortgage Banking and has an extensive background in mortgages, underwriting, quality assurance, due diligence, claims management, and fraud management. Ms. Wilson is currently employed as the Executive Vice President of

6

Interthinx where she has worked since 1996 and has designed multiple products focused on the identification and prevention of mortgage fraud activities.   In addition to her employment with Interthinx, Ms. Wilson has held several jobs in the mortgage industry including:  Vice President at Citicorp Mortgage where she managed the Quality Control Department, established the first Lender Fraud Investigation Unit, and developed a manual scoring model which enabled Quality Control to identify high risk loans for strategic and targeted sampling model; Residential Lending Manager for Eastern Financial where she was responsible for the Underwriting, Processing and Shipping Departments.  Ms. Wilson authored and published an extensive Fraud Training Program nationwide to be used by financial institutions, the mortgage industry, as well as State and Federal Law Enforcement Agencies.  She has also previously testified as an expert witness in D.C. Federal Court.

Based on her training and experience, Ms. Wilson is sufficiently qualified to provide testimony related to her specialized knowledge of the industry-accepted standards of underwriting and whether the review of the relevant loan application documents in this case met those standards.

### III.   CONCLUSION

Because the government's proffered expert testimony is both relevant to this matter and reliable on its face, the government respectfully requests that the Court find this evidence to be admissible without holding a *Daubert* hearing on the matter.

RESPECTFULLY SUBMITTED, this 24th day of September, 2007.

> GRETCHEN C. F. SHAPPERT, United States Attorney
> s/ Craig D. Randall
> Assistant United States Attorney
> North Carolina Bar:  26638
> United States Attorney's Office
> 227 West Trade Street, Suite 1650
> Charlotte, North Carolina 28202
> (704) 344-6222 (office)
> (704) 344-6629 (facsimile)
> Craig.Randall@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September, 2007, the foregoing **Government's Response in Opposition to Defendant's Motion to Preclude Opinion Evidence** was duly served upon the defendants by electronic filing at the following addresses:

**Kevin Tate**

227 W. Fourth Street, Suite 300
Charlotte, NC 28202
704-374-0720
Fax: 704-374-0722
Email: Kevin_Tate@fd.org

**Kimberly Yvette Best**

Best Law Firm, PLLC
PO Box 37154
Charlotte, NC 28237-7154
704-332-9942
Fax: 704-376-4463
Email: thebestlawfirm@bellsouth.net

           s/ Craig D. Randall
           Assistant United States Attorney
           North Carolina Bar: 26638
           United States Attorney's Office
           227 West Trade Street, Suite 1650
           Charlotte, North Carolina 28202
           (704) 344-6222 (office)
           (704) 344-6629 (facsimile)
           Craig.Randall@usdoj.gov